954

John B. Arnold and Mette L. Arnold, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

N. B. Arnold and Mary F. Arnold, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

John B. Arnold, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

N. B. Arnold, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 20887–20890.   Promulgated December 28, 1928.

*Arnold R. Baar, Esq., Arthur R. Foss, Esq., Thorwald Hansen, Esq., John B. Arnold, Esq.,* and *N. B. Arnold, Esq.,* for the petitioners.

*James A. O'Callaghan, Esq.,* and *De Witt M. Evans, Esq.,* for the respondent.

OPINION.

GREEN: The dominant question in these cases is whether the respondent was correct in determining that all of these petitioners in all of the years in question filed false and fraudulent returns with intent to evade tax. At the time these cases were heard the rule of this Board was that the determinations of the respondent, both as to the amount of the tax and the proposal of a fraud penalty, were presumed to be correct. However, the burden of proof with respect to the correctness of determining fraud was by an act of Congress changed shortly thereafter and now such burden of proof is upon the respondent. (Section 601, 1928 Act.)

The petitioners in this case are in a situation of being compelled to disprove the fraud which the respondent has determined existed in accordance with the then existing rule. Nowhere, either in the preliminary or 60-day letters addressed to these petitioners or in the pleadings, is there to be found any specification or enumeration of the alleged fraudulent acts. From the statements of counsel and their arguments and briefs, we gather that the respondent's position is that in three respects the returns of these petitioners were false and fraudulent. The first of these apparently relates to the method of reporting and the amount reported as income from the legal services referred to in the foregoing findings of fact. The second is the reduction of the amount of income reported by the amounts paid to the wives as salaries. The third relates to certain statements contained in the briefs filed with the respondent during the time that matters were pending in the Bureau of Internal Revenue. Our task would have been greatly simplified if there had been precise allega-

tions as to the acts which the respondent determined to be fraudulent. As it is we have some difficulty in determining to what the presumption of correctness attaches.

It is clear that as to each of the years in question the petitioners employed persons whom they believed to be competent to prepare their returns and that as to the first two years they relied entirely upon their judgment as to the accounting methods to be followed in determining income. It further appears that as to the third year those employed by them to prepare the returns consulted certain revenue agents then in the offices of the petitioners, auditing their returns and accounts, and were by them advised to continue to report the income in the manner theretofore followed. The advice of these supposedly competent persons was relied upon explicitly and there is nothing in the record to indicate that the method of reporting income thus adopted was chosen for any improper purpose. We hold that no fraud was committed in choosing the method of reporting income.

The method of reporting income thus chosen by the petitioners was not the correct one, but such an error on their part having been made in good faith can not be the basis for the imposition of fraud penalties. The true question is whether these petitioners, in accordance with the method of reporting income which they had chosen, honestly and in good faith attempted so to report such income.

In these cases the petitioners have accepted the method of computing income chosen by the respondent and, using his computation as the basis, have endeavored to prove their net income in conformity with that method. They have taken no exception to the use of this method by the respondent, and therefore the question of its correctness is not before us and we discuss this phase of the matter only as bearing upon the good faith of the petitioners. From an examination of the relative merits of the method of reporting income chosen by the petitioners and the method of reporting chosen by the respondent, we are inclined to believe that the method chosen by the petitioners more accurately reflects their income.

The more difficult question is whether these petitioners earnestly and in good faith attempted to report, according to the method chosen by them, all of their income for the years in question. In an examination of this question we must of necessity consider all the facts and circumstances surrounding the conduct of the petitioners' business and all of the facts and circumstances incident to the preparation of the returns. The record discloses that, while the Arnolds were lawyers, they were unfamiliar with income-tax laws and that they had given practically no consideration to questions relating to

income taxes. It further discloses that they were engaged in the handling and prosecution of a great number of claims against the Railroad Administration involving in the aggregate a tremendous sum of money and necessitating almost endless labor. Under such circumstances we do not think it improper for these petitioners to employ and rely upon those whom they believed to be competent to prepare their returns, bearing in mind the very unusual circumstances then existing and the uncertainty still existing as to the correct method of reporting the income derived by these petitioners. At the time the fees began to come in it was extremely difficult, if not, indeed, impossible, to determine what proportion of the fees thus received would become the undisputed property of the Arnolds due to the claims of the various persons interested therein, and these matters of dispute continue undetermined through all the years in question and some of them are still undisposed of. One Alvord prepared the returns for the year 1921. He determined the method to be used in their preparation. Their preparation occupied some 30 days of his time. On the witness stand he testified that he thought the method adopted was correct and that he still thought so. We are convinced that Alvord honestly exercised his best judgment in the preparation of these returns and that he earnestly sought to have them correctly reflect the petitioners' income.

The returns for 1922 and 1923 were prepared in the same manner and several persons who participated in their making took the stand and testified as to the good faith employed therein. In each of the years it was the intent of those preparing the returns to cause to be set out in the returns, as gross income, the fees which were actually withdrawn by each of the Arnolds out of the joint "Arnold and Arnold Fire Case Account", it being their belief that such was the correct method of reporting income under the circumstances.

Some two or three months prior to the hearing of these proceedings, the witness Sparen, in whose honesty and integrity we have the utmost confidence, went over the personal accounts of the Arnolds for the purpose of determining the exact amounts of cash withdrawn by them. The result of his examination is as follows:

*N. B. Arnold*

| Year | Deposited in personal account | Paid to Mary F. Arnold | Investments | Miscellaneous | Total |
|---|---|---|---|---|---|
| 1921 | $30,275.00 | | | | $30,275.00 |
| 1922 | 50,023.30 | $12,000 | $1,200.00 | $865.83 | 64,089.13 |
| 1923 | 38,623.90 | 12,976 | 12,677.03 | 767.27 | 65,044.20 |
| | 118,922.20 | 24,976 | 13,877.03 | 1,633.10 | 159,408.33 |

J. B. Arnold

| Year | Deposited in personal account | Paid to Mette L. Arnold | Paid to J.B. Arnold, jr. | Invest- ments | Miscella- neous | Total |
|---|---|---|---|---|---|---|
| 1921 | $52,500.00 | | | | | $52,500.00 |
| 1922 | 65,327.72 | $8,500.00 | $300.00 | $4,974.50 | $779.82 | 79,882.04 |
| 1923 | 58,201.22 | 12,235.48 | 1,748.30 | 14,235.46 | 2,453.89 | 88,874.35 |
| | 176,028.94 | 20,735.48 | 2,048.30 | 19,209.96 | 3,233.71 | 221,256.39 |

A comparison of the amounts of cash thus found to be withdrawn with the amounts reported by the Arnolds as fees is as follows:

| N. B. Arnold | | | J. B. Arnold | | |
|---|---|---|---|---|---|
| Year | Reported in returns | Reexamina- tion by Sparen | Year | Reported in returns | Reexamina- tion by Sparen |
| 1921 | $28,478.90 | $30,275.00 | 1921 | $37,135.97 | $52,500.00 |
| 1922 | 54,098.30 | 62,023.30 | 1922 | 85,650.41 | 73,827.72 |
| 1923 | 33,570.54 | 51,599.90 | 1923 | 65,288.32 | 70,436.70 |

In the totals set forth as having been withdrawn are included in each instance, the amounts paid to the wives. If these amounts are excluded we find nothing in the returns to indicate that they were not made in good faith in an honest endeavor to correctly report income. Disregarding for the moment the deductions for wives' salaries, which matter we discuss later, we find nothing to indicate that any of the returns were false or fraudulent.

There is no dispute about the existence of the book entries relating to the wives' salaries. It is equally true that in each instance the wives reported as income the amounts shown by the books as having been credited to their accounts, though as a matter of fact in some instances they actually received amounts which were substantially less. It is likewise true that one of the wives rendered services which were of substantial value and as to which we have found she was entitled to compensation. The proof as to the services rendered by the other wife is not so convincing, but it is apparent that each of the wives was forced to economize during the years involved and that each was promised substantial amounts if the litigation termi- nated successfully. Both of the Arnolds testified that it was their belief at the time the returns were filed that the amounts credited or paid to their wives should not be, and were not on their returns, treated as deductions in computing their net income and that such amounts should be reported as income by their wives. It is now evident that as to the year 1922 those preparing the returns did reduce gross income by these amounts. As to the year 1923, it is apparent that the witness Sparen, who prepared these returns, en- deavored to adjust the net income shown on the Arnolds' returns

so as to include the amounts paid to the wives. His failure so to do was first brought to his attention while he was on the witness stand and it was with some difficulty that he was convinced that the computation which he had made in his effort to include these amounts in gross income had not produced the desired result.

The system of accounting existing in the offices of the Arnolds at the time the fees began to come in was hopelessly inadequate, and to this inadequacy is to be charged a great portion of the confusion which has resulted. Because the Arnolds did not appreciate the necessity and importance of an adequate system of accounts, no thoroughgoing revision of the system was undertaken and an inadequate personnel was retained to maintain such accounts as were kept. There is, however, nothing to indicate that inadequate records were maintained to the end that the amount of gross income actually derived be concealed.

There is no affirmative proof of fraud in this respect and the Commissioner's case rests upon the presumption of the correctness of his determination and such inferences as may be drawn from the fact that these amounts were credited as salary to the accounts of the wives. Each of the petitioners took the stand and testified that there was no bad faith in the preparation of these returns and that it was the belief of the Arnolds that the amounts credited to the accounts of the wives as salaries would be subject to double tax. Supporting their testimony, we have that of the several witnesses who participated in the preparation of the returns. We think the affirmative evidence more than sufficient to overcome the presumption in favor of the Commissioner's determination, and accordingly hold that there was no fraud in this respect.

The third charge of fraud grows out of what appears to be a not wholly justifiable misconstruction of a brief filed in the Bureau of Internal Revenue by the attorneys for the petitioners. We know this brief to have been prepared by a firm of reputable attorneys and it is inconceivable to us that this firm would be a party to any misrepresentation before the Bureau of Internal Revenue or elsewhere. Even if this brief did seek to misrepresent the situation, and it clearly does not, it could not serve as the basis for the imposition of a fraud penalty, for the returns themselves are the things which are subjected to the test.

Three revenue agents spent more than a year investigating the returns filed by these petitioners for the three years in question. Their reports to the respondent have been placed before us. While it is to be noted (as set out in the findings of fact) that the agents recommended a great many changes in the income and deductions

from those shown on the returns, some of which were for and some against the petitioners, yet nowhere in the reports did the examiners suggest or even infer that fraud had been committed.

We have carefully considered all of the facts in the record presented to us and have weighed them carefully against the presumption of correctness and it is our opinion that the record does not establish fraud; that the affirmative proof of good faith far outweighs the presumption and that the action of the respondent in imposing the fraud penalties was erroneous.

In our preliminary statement we itemized all of the numerous errors other than fraud which were alleged in the several petitions. We will not repeat them here. The petitioners withdrew any claim to a deduction for compensation to Mette L. Arnold and in the case of J. B. Arnold, the claim for a bad debt deduction of the account of Edward Finch in the amount of $59.55 was abandoned.

The remaining errors can be best disposed of by summarizing our findings of fact in such a way as to show the corrected net income of each petitioner upon which the deficiencies should be recomputed.

The corrected net income of the petitioners for the years 1921 to .1923, inclusive, is as follows:

### J. B. Arnold and wife, 1921

| | |
|---|---:|
| Net income as determined by respondent | $45,872.60 |
| Deduct: Taxes | 3,109.37 |
| Corrected net income | 42,763.23 |

### J. B. Arnold, 1922

| | | |
|---|---:|---:|
| Net income as determined by respondent | | $77,710.99 |
| Deduct: | | |
| Taxes | $2,019.86 | |
| Salary, Mary F. Arnold | 2,500.00 | |
| Salary, J. B. Arnold, jr | 1,100.00 | |
| Bad debts: | | |
| Finch, Anderson, et al | $320.70 | |
| C. J. Petruschke | 450.96 | |
| J. C. Smith | 184.40 | |
| A. Arnold | 476.17 | |
| John G. Howard | 400.00 | |
| Lake Superior Copper Co | 1,050.00 | |
| Superior Copper Mines Co | 2,600.84 | |
| C. E. Fitzgerald | 2,200.00 | |
| Advances Mars Oil Co | 937.50 | |
| Advances San Antonio Oil & Development Co | 1,191.10 | |
| | | 9,811.67 |

Losses:

| | | |
|---|---|---|
| Mars Oil Co. stock | $4, 800. 00 | |
| San Antonio Oil & Development Co. stock | 1, 650. 00 | |
| Investment Brule property | 5, 158. 07 | |
| St. George Mining Co. stock | 500. 00 | |
| | $12, 108. 07 | |
| | | $27, 539. 60 |

Corrected net income _____ 50, 171. 39

### J. B. Arnold, 1923

Net income as determined by respondent _____ $62, 299. 38

Deduct:

| | |
|---|---|
| Taxes | $723. 37 |
| Salary, Mary F. Arnold | 2, 500. 00 |
| Salary, J. B. Arnold, jr | 900. 00 |
| Bad debt, E. A. Arnold | 7, 660. 77 |
| Loss, Holt Power-Light Co. stock | 2, 500. 00 |
| | 14, 284. 14 |

Corrected net income _____ 48, 015. 24

### N. B. Arnold and wife, 1921

Net income as determined by respondent approved _____ $43,382. 68

### N. B. Arnold, 1922

Net income as determined by respondent _____ $100, 471. 61

Deduct:

| | |
|---|---|
| Salary, Mary F. Arnold | $2, 500. 00 |
| Salary, J. B. Arnold, jr | 1, 100. 00 |
| | 3, 600. 00 |

Corrected net income _____ 96, 871. 61

### N. B. Arnold, 1923

Net income as determined by respondent _____ $80, 288. 42

Deduct:

| | |
|---|---|
| Salary, Mary F. Arnold | $2, 500. 00 |
| Salary, J. B. Arnold, jr | 900. 00 |
| Bad debt, E. A. Arnold | 3, 584. 50 |
| Loss, Holt Power-Light Co. stock | 2, 500. 00 |
| | 9, 484. 50 |

Corrected net income _____ 70, 803. 92

The evidence with respect to the several assignments of error not reflected in the above redetermination of the petitioners' net income was insufficient to enable us to make any finding which would result in disturbing the position taken by the respondent.

In conclusion we find that the petitioners were not guilty of filing false or fraudulent income-tax returns with intent to evade any income tax for any of the years before us, and that the deficiencies should be recomputed in accordance with the corrected net income set out in this opinion.

*Judgment will be entered under Rule 50.*